**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PETER R. BRIGGS, JR.,** | ) | |
| **Plaintiff,** | ) | **No. 12 C 6215** |
| | ) | |
| **v.** | ) | |
| **CAROLYN W. COLVIN,** | ) | **Magistrate Judge Geraldine Soat Brown** |
| **Acting Commissioner of Social** | ) | |
| **Security,** | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Peter R. Briggs, Jr. brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act, 42 U.S.C. §§ 421, 423. (Compl.) [Dkt 1.][1] Plaintiff has filed a motion for summary judgment [dkt 21] and a supporting memorandum seeking an order reversing the Commissioner's final decision and entering a finding of disability and award of benefits or remanding for further administrative proceedings (Pl.'s Mem.) [dkt 22]. The Commissioner has cross-moved for summary judgment [dkt 23] and has submitted a memorandum in support of the cross-motion (Def.'s Mem.) [dkt 24]. Plaintiff has replied. (Pl.'s Reply.) [Dkt 25.] The parties have consented to the

---

[1] The regulations regarding DIB and SSI are substantially similar and where they do not significantly differ, only one section will be cited. *See Ashpaugh v. Apfel*, No. 98 C 6561, 2000 WL 1222153 at *1 n. 3 (N.D. Ill. Aug. 22, 2000).

jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c).  [Dkt 7.]  For the reasons set forth below, Plaintiff's motion is denied and the Commissioner's motion is granted.

## PROCEDURAL HISTORY

Plaintiff first applied for benefits on December 14, 2005.  (R. 225.)[2]  His claim was denied initially on August 18, 2006, and again upon reconsideration on January 25, 2007.  (R. 102-09.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on March 16, 2009.  (R. 67-94.)  The ALJ issued a decision denying Plaintiff's request for benefits on May 27, 2009.  (R. 113-22.)  On January 5, 2010, finding various shortcomings with the ALJ's decision, the Appeals Council remanded the case back to the ALJ.  (R. 125-28.)  On October 21, 2010, another hearing was held (R. 34-66), and the ALJ issued a decision again denying Plaintiff's request for benefits on April 21, 2011.  (R. 12-26.)  The Appeals Council declined Plaintiff's request for review on October 27, 2011 (R.1-6), thereby making the ALJ's decision the final decision of the Commissioner.  *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## BACKGROUND

Plaintiff was 40 years old at the time of the hearing before the ALJ.  (R. 226.)  He lives with his mother and father.  (R. 37.)  Plaintiff has a college degree.  (R. 464.)  Previously, Plaintiff had managed a restaurant and a liquor store and had done some financial trading.  (R. 61.)

---

[2]There appears to have been a printing error in compiling the administrative record, and as a result some of the pages have two consecutive page numbers with one number printed over the second number.  The lower number is used here.

**Medical Evidence**

It is uncontested that Plaintiff has bipolar disorder and generalized anxiety disorder, which are exacerbated by his alcohol use. What is contested in this appeal is whether, in the absence of alcohol use, Plaintiff's impairments would be severe enough as to prevent him from working.[3]

In his original application, Plaintiff alleged that the onset date of his disability was August 2, 2005. (R. 225.) At the second hearing before the ALJ, the Plaintiff offered to amend his onset date to January 16, 2009. (R. 36-37.)[4] For this reason, Plaintiff's brief focuses on his treatment records after January 2009. (Pl.'s Mem. at 2 n. 3.) As such, this opinion will not go into detail about Plaintiff's pre-2009 medical history.

From 2005 through 2008, Plaintiff was hospitalized about ten times following drinking episodes. (R. 17.) On January 17, 2009, Plaintiff was again hospitalized after relapsing on alcohol. (R. 933.) Dr. Song Piyaka diagnosed Plaintiff with bipolar disorder and alcohol abuse disorder. (R. 934.) He noted that Plaintiff "felt bad and guilty about [his relapse]" and observed that Plaintiff had "suicidal thoughts, but no intent." (R. 933.) Following his hospitalization, Plaintiff "required a week-long stay in . . . a post-hospital residential program[] to help stabilize his mood." (R. 937.)

---

[3]Although Plaintiff has alleged that he has back pain, the ALJ did not find any "documentary evidence of a medically determinable back impairment," and Plaintiff does not raise his back pain as an issue in his motion. (R. 16.) Plaintiff's back pain is therefore not addressed here.

[4]The ALJ seemingly accepted this amendment at the hearing, but in his decision stated that Plaintiff's alleged onset date was August 2, 2005. (R. 12.) As pointed out by the Plaintiff (Pl.'s Mem. at 2 n. 2) and the Appeals Council (R. 2), the ALJ erroneously stated that Plaintiff's date last in insured was June 30, 2007, rather than December 31, 2010. (R. 13.) Because the ALJ found that Plaintiff had not been disabled at any time "through the date of the hearing decision," the Appeals Council did not find the ALJ's error warranted disturbing the ALJ's decision. (R. 2.) Plaintiff does not argue that this error is grounds for reversing or remanding the ALJ's decision, and therefore, it will not be addressed in this opinion.

In March 2009, Dr. Piyaka wrote a letter opining that Plaintiff's "symptoms are so severe that it is not possible at this time or in the near future for him to be employed." (R. 935.)

Plaintiff's treating psychologist Dr. Ann Sarpy also wrote a letter in March 2009 that discussed Plaintiff's history of hospitalizations and stated that Plaintiff's bipolar disorder "has strongly negatively affected his personal relationships, ability to run a business, or grow emotionally as a man." (R. 937.) Dr. Sarpy also noted that Plaintiff has "co-occurring alcohol abuse," and that "[i]t is often the case, that, when [Plaintiff] felt manic or depressed, he has drunk alcohol, due to his lack of judgment." (*Id.*) Treatment notes from March 2009 to through June 2009 indicate that Plaintiff remained sober for those months, attended and chaired some Alcoholics Anonymous meetings, and still "had bouts of depression and mania." (R. 995-97.) In June 2009, Dr. Sarpy opined in a letter that Plaintiff had been sober for six months, but still had depressive and manic episodes and was "not a candidate for full or part-time employment." (R. 1003.) From July 2009 through December 2009, Plaintiff maintained sobriety and began to work on a book detailing his experiences with bipolar disorder. (*See* R. 1125-59.) He consistently reported feeling anxiety about his white blood cell count, an unrelated lawsuit, and his social security disability case. (*See id.*) In October 2009, Plaintiff reported that he was taken off his lithium medication due to his high white blood cell count. (R. 1135.)

In December 2009, Plaintiff relapsed with alcohol and presented to the emergency room. (R. 1013.) Dr. Piyaka's report indicated that Plaintiff was taken off lithium not for his white blood cell count, but for his eczema. (*Id.*) Dr. Piyaka recommended that Plaintiff resume taking lithium. (*Id.*) Treatment notes from January 2010 indicate that Plaintiff resumed his lithium therapy, and expressed continuing anxiety over his social security disability application. (R. 1118-19.) He acknowledged

drinking again, and appeared to show up for one appointment under the influence of alcohol. (R. 1117.) Also in January, Dr. Sarpy wrote another opinion letter stating that Plaintiff "reports sobriety for the last 6 months" and opining that Plaintiff was unable to work. (R. 1004.)

In March 2010, Plaintiff stopped taking his medication because he felt that he was being "'jerked around'" by the Social Security Administration. (R. 1100.) On March 10, 2010, Plaintiff reported to the hospital for depression and suicidal thoughts. (R. 1021.) Plaintiff had not been taking his medication for one week prior to the hospitalization. (R. 1022.)

Later that month, Plaintiff was examined and evaluated by Department of Disability Services consultive examiner Dr. Chirag Reval. (R. 1009-10.) Dr. Reval found that Plaintiff had mild restrictions in understanding and carrying out simple instructions and interacting appropriately with the public and supervisors. (R. 1010-11.) Dr. Reval opined that Plaintiff had moderate restrictions in making judgments on simple or complex work-related decisions, understanding and carrying complex instructions, interacting with co-workers, and responding appropriately to usual work situations. (*Id.*) In April 2010, independent psychologist Dr. Kathleen O'Brien completed a medical interrogatory opining that, without alcohol, Plaintiff did not meet a listing level and did not have marked impairments in functioning. (R. 1074.)

Treatment notes indicate that Plaintiff missed many appointments from April 2010 through July 2010. (R. 1080-95.) He reported feeling manic at times, but did state that when he is with his girlfriend, "I practically feel no anxiety." (R. 1080, 1083.) In August 2010, Plaintiff's treating therapist Michael Lewis opined that Plaintiff had marked restrictions in socialization and that Plaintiff's "illness markedly impact[ed] [his] ability to sustain concentration and attention." (R. 1161.) In October 2010, Dr. Sarpy wrote another letter again opining that Plaintiff was unable to

work, and noting that Plaintiff had "reported sobriety for the last 18 months." (R. 1163.)

**Hearing**

At the second hearing on October 21, 2010, Plaintiff, independent medical expert Dr. Kathleen O'Brien, and vocational expert Glee Ann L. Kehr testified. (R. 35.) Plaintiff testified that in the past year and a half, he had tried to work at the restaurant he used to manage but could not work for more than an hour due to anxiety, nervousness, and an inability to concentrate. (R. 42.) He described how his medication for his manic episodes "shuts [him] down" for sometimes days at a time. (R. 42-43.) Plaintiff related that he had experienced a couple manic episodes in the past couple months. (R. 43.) He stated that he has problems sleeping "every night." (R. 44.) He testified that he goes to movies with his girlfriend but cannot "sit still very well" during the movie. (*Id.*)

He further added that "about 50 percent of the time" he feels "good or "fine," and when feeling "okay" he can follow simple instructions. (R. 45.) When he is "off a little bit," however, he loses concentration and "forget[s] what was just told to him." (*Id.*) He stated that he has problems being around people and that he "usually last[s] about an hour at most" in social situations. (*Id.*) Plaintiff explained that he had missed his treatment appointments because he was either on vacation in Florida or was suffering from a manic or depressive episode and could not leave the house. (R. 57-58.)

Dr. O'Brien then testified. (R. 48-62.) The substance of her testimony is discussed later is this opinion. Lastly, the vocational expert ("VE") testified that Plaintiff could perform work as a housekeeper, mailroom clerk, or office helper, and that there were 3,200, 6,000, and 2,100 positions

6

for those jobs respectively in the metropolitan area.  (R. 63.)

### Disability Determination Process

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The regulations prescribe a five-part sequential test for determining whether a claimant is disabled.  *See* 20 C.F.R. § 404.1520. Under the regulations, the Commissioner must consider: (1) whether the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) if she has not performed any substantial gainful activity, whether the claimant has a severe impairment or combination of impairments; (3) if the claimant has a severe impairment, whether the claimant's impairment meets or equals any impairment listed in the regulations as being so severe and of such duration as to preclude substantial gainful activity; (4) if the impairment does not meet or equal a listed impairment, whether the claimant retains the residual functional capacity to perform her past relevant work; and (5) if the claimant cannot perform her past relevant work, whether she is unable to perform any other work existing in significant numbers in the national economy.  *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).  An affirmative answer at steps one, two or four leads to the next step.  *Zurawski*, 245 F.3d at 886.  An affirmative answer at steps three or five requires a finding of disability, whereas a negative answer at any step other than step three precludes a finding of disability.  *Id.*  The claimant bears the burden of proof at steps one to four, and if that burden is met, the burden at step five shifts to the Commissioner to establish that the claimant is capable of

7

performing work existing in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2); *Zurawski*, 245 F.3d at 886.

The central issue in Plaintiff's case is the role of his alcohol use in determining his disability status. According to statute, "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). In other words, "[w]hen an applicant for disability benefits both has a potentially disabling illness and is a substance abuser, the issue for the administrative law judge is whether, were the applicant not a substance abuser, she would still be disabled." *Kangail v. Barnhart*, 454 F.3d 627, 628 (7th Cir. 2006). The regulations provide further guidance:

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 404.1535(b).[5]

----

[5]There is some debate about which party bears the burden of showing that a claimant would be or would not be disabled absent drug use. *See Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1093-96 (N.D. Ill. 2012) (discussing disagreement among courts). In an unpublished, non-precedential

### The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since August 2, 2005.[6] (R. 15.) At step two, the ALJ concluded that Plaintiff had the severe impairments of bipolar disorder, generalized anxiety disorder, and alcohol dependence. (*Id.*) At step three, the ALJ found that the Plaintiff's impairments including substance use disorder met a disability listing. (R. 16.) The ALJ then found that if the Plaintiff "stopped the substance use," he would not have an impairment that met a listing. (R. 18.)

The ALJ assessed Plaintiff's residual functional capacity as that of performing work at all exertional levels, but limited to "unskilled work involving simple repetitive tasks, limited public contact, and no high production demands." (R. 19.) In reaching that conclusion, the ALJ found that if Plaintiff stopped substance use, Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent they are inconsistent with the residual functional assessment." (R. 20.) As for opinion evidence, the ALJ discounted Dr. Sarpy's opinions, rejected Mr. Lewis' opinion, gave some weight to Dr. Reval's opinion, and gave "very substantial weight" to Dr. O'Brien's opinion. (R. 22-24.)

At step four, the ALJ found that even if Plaintiff ceased substance use, he would be unable

---

decision, the Seventh Circuit has stated that the claimant bears the burden. *Harlin v. Astrue,* 424 F. Appx. 564, 567 (7th Cir. 2011). Neither party raises the burden of proof issue, and in any event, even if the Commissioner bears the burden of showing that Plaintiff would be not be disabled absent his alcohol use, it would not change the decision here as there is substantial evidence that would support such a finding.

[6]As discussed above, Plaintiff amended his alleged onset date at the hearing to January 16, 2009, but Plaintiff does not argue that any discrepancies in the onset date are grounds for remand or reversal. *See* note 4 *supra*.

9

to perform past relevant work. (R. 24.) At step five, the ALJ concluded that if Plaintiff stopped substance use, "there would be a significant number of jobs in the national economy that [Plaintiff] could perform." (R. 25.) Thus, based on that analysis, the ALJ found that Plaintiff was not disabled as defined by the Social Security Act. (R. 26.)

### STANDARD OF REVIEW

The Social Security Act provides for limited judicial review of a final decision of the Commissioner. *See* 42 U.S.C. § 405(g). Where the Appeals Council declines a requested review of an ALJ's decision, it constitutes the Commissioner's final decision. *Villano*, 556 F.3d at 561-62. While an ALJ's legal conclusions are reviewed *de novo*, her factual determinations are reviewed deferentially and are affirmed if they are supported by substantial evidence in the record. *Jones v. Astrue,* 623 F.3d 1155, 1160 (7th Cir. 2010); *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Evidence is substantial if it is sufficient for a reasonable person to accept it as adequate to support the decision. *Jones*, 623 F.3d at 1160; *Craft*, 539 F.3d at 673. "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the decision lacks evidentiary support. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When evaluating a disability claim, the ALJ must consider all relevant evidence and may not select and discuss only the evidence that favors her ultimate conclusion. *See Murphy v. Astrue*, 496 F.3d 630, 634-35 (7th Cir. 2007); *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Although the ALJ is not required to discuss every piece of evidence, the ALJ must provide an accurate and logical bridge between the evidence and the conclusion, so that a reviewing court may assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review. *Craft*,

539 F.3d at 673. "If the Commissioner's decision lacks adequate discussion of the issues, it will be remanded." *Villano*, 556 F.3d at 562.

## DISCUSSION

Plaintiff takes issue with four aspects of the ALJ's decision. According to Plaintiff, the ALJ (1) erred in not giving the opinions of Plaintiff's treating psychologist Dr. Sarpy controlling weight, (2) improperly relied on the opinion of the testifying medical expert Dr. O'Brien, (3) improperly evaluated his credibility, and (4) failed to consider the medical evidence past March 2010.

## 1.    Dr. Sarpy

Plaintiff contends that the ALJ improperly discounted the opinion of Plaintiff's treating psychologist Dr. Sarpy. (Pl.'s Mem. at 9-12.) If a treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ is obliged to give it "controlling weight." 20 C.F.R. § 404.1527(c)(2). If a treating source's opinion is not given controlling weight, the ALJ must state what weight it is given and analyze the opinion according to the factors listed in 20 C.F.R. § 404.1527(c)(2).[7] These factors include "'the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion.'" *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) (quoting *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010)).

---

[7] Until March 26, 2012, these factors were listed in 20 C.F.R. § 404.1527(d)(2). *See* 77 Fed. Reg. 10651-01, 10656 (Feb. 23, 2012).

Dr. Sarpy has treated Plaintiff since 2005. (Pl.'s Mem. at 12.) Over the course of her treatment, Dr. Sarpy has written four opinion letters concluding that Plaintiff is unable to work due to his bipolar disorder. (R. 603, 1003, 1004, 1163).[8]

Dr. Sarpy's first letter, dated November 29, 2006, stated that Plaintiff "has a Diagnosis of Bipolar Disorder" and the "history of substance induced mood disorder . . . was erroneous" because Plaintiff "has been sober since June [2006] and has still suffered both manic and depressive episodes." (R. 603.) The letter further indicated that Plaintiff "has shown up for treatment consistently" and that it was Dr. Sarpy's "medical opinion that he would not be able to reliably maintain employment at this [sic] due to his symptoms of Bipolar Disorder." (*Id.*)

The ALJ rejected this opinion because he found it to be inconsistent with Dr. Sarpy's treatment notes and with the record. (R. 23.) Specifically, the ALJ pointed to an April 2006 report where Dr. Sarpy noted that Plaintiff's "drinking interfered with the performance of his medications," and when Plaintiff "is sober his medications work as they are intended." (*Id.*) The ALJ also noted that, contrary to Dr. Sarpy's assertion, Plaintiff had neither been "complaint [with treatment] nor sober" as Plaintiff had an episode of binge drinking in July 2006 and had missed therapy appointments throughout the summer of 2006. (*Id.*) The record supports the ALJ's conclusion; it reflects that Plaintiff had a serious alcohol relapse in July 2006 and missed six appointments in July and August 2006. (R. 612-13.) Lastly, the ALJ discredited Dr. Sarpy's opinion because during that time period Plaintiff "was working a lot at a job that exceeded the residual functional capacity reached in [the ALJ's] decision." (R. 24.)

---

[8] Dr. Sarpy also wrote a letter dated March 6, 2009, but that letter contains no opinion as to whether Plaintiff is able to work. (R. 937.)

Plaintiff takes issue with the ALJ's discussion of the November 29, 2006 letter. Plaintiff does not contest that he had a relapse; nor does he contest that he missed appointments. Instead, Plaintiff states that by November 2006, he had maintained three months of sobriety, and that the missed appointments do not undermine Dr Sarpy's assessment "that Plaintiff was compliant, overall." (Pl.'s Mem. at 10-11.) Further, citing Plaintiff's hearing testimony, Plaintiff contends that he missed appointments due to "severe symptoms." (*Id.*) Plaintiff's assertions do not undermine the ALJ's decision to discount Dr. Sarpy's opinion as inconsistent with the record because contrary to Dr. Sarpy's letter, Plaintiff had not been sober since June 2006 and had not shown up for treatment "consistently" as Dr. Sarpy indicated.

The ALJ also rejected Dr. Sarpy's June 26, 2009 letter wherein Dr. Sarpy indicated that Plaintiff "has been compliant with all treatment recommendations and appointments." (R. 1003.) Dr. Sarpy stated that Plaintiff "reports sobriety for the last 6 months" and that "family corroborates his accounts." (*Id.*) The ALJ pointed out that, contrary to Dr. Sarpy's letter, the medical records show that Plaintiff had missed "many therapy sessions during March and April" of 2009 and that Plaintiff "showed up at many sessions under the influence." (R. 23.)

The ALJ also discussed Dr. Sarpy's October 19, 2010 letter, wherein Dr. Sarpy stated that Plaintiff "reports sobriety for the last 18 months" and that "[f]amily corroborates his accounts." (R. 1163.) The ALJ discounted the opinion because it was "written less than a year after [Plaintiff's] December 2009 hospitalization after a drinking binge," and thus, as with the other letters "this opinion that the [Plaintiff] is unable to work is predicated upon information that is not accurate." (R. 24.)

Plaintiff argues that it was error for the ALJ to discount the October 2010 opinion, because

13

even if the Plaintiff had been drinking in December 2009, he had been sober for nine months at the time Dr. Sarpy's opinion was written. (Pl.'s Mem. at 12.) Further, according to Plaintiff, the hospitalization in December 2009 "stemmed from being taken off lithium," and Dr. Sarpy's notes indicate that she was aware of the hospitalization. (*Id.* at 11.) Plaintiff contends that the ALJ "wholly fail[ed] to evaluate what her opinion was truly saying – that Plaintiff was still very symptomatic, despite abstinence from alcohol." (*Id.* at 12.) None of these statements, however, change the fact that Plaintiff had not been sober for the 18 months that Dr. Sarpy indicated in her letter, and accordingly, the ALJ validly discounted Dr. Sarpy's October 2010 opinion because it was inconsistent with the record.

Lastly, Plaintiff contends that the ALJ erred by not discussing the weight given to Dr. Sarpy's January 2010 opinion. That opinion is substantially identical to Dr. Sarpy's October 2010 opinion except for the fact that the January opinion stated that Plaintiff's reported sobriety was six months rather than 18 months. (R. 1004.) Plaintiff states that "[i]t was critical for the ALJ to consider that opinion because, up to that point, it was the first with an extended period of sobriety, prior to it, with no relapses." (Pl.'s Mem. at 11.) Contrary to Plaintiff's brief and Dr. Sarpy's letter, Plaintiff had not been sober for six months at the time the letter was written. In fact, he had been hospitalized the month earlier after relapsing on alcohol. It is hard to see how the ALJ's failure to discuss explicitly the weight given to the January 2010 letter constitutes error when it is nearly identical to the October 2010 letter, and is once again based upon a false predicate that Plaintiff had been sober for a number of months even though he had been hospitalized after drinking the month before the letter was written. Further, even if that failure were error, it would be harmless as "no reasonable ALJ would reach a contrary decision on remand." *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

14

In sum, the ALJ sufficiently articulated his reasons for the weight given to Dr. Sarpy's opinions.

2.     **Dr. O'Brien**

Dr. O'Brien is a licensed clinical psychologist who filled out a medical interrogatory and also testified at the second hearing as a non-examining, impartial medical expert. (R. 48.)

In her April 2010 medical interrogatory, Dr. O'Brien found that Plaintiff had bipolar disorder, general anxiety disorder, and alcohol dependence. (R. 1074.) She found that with alcohol, Plaintiff had moderate restrictions in activities of daily living, marked restrictions in maintaining social functioning and maintaining concentration, persistence, or pace, and repeated episodes of decompensation. (R. 1073.) Without alcohol, however, Dr. O'Brien found that Plaintiff's restrictions would be mild or moderate, and noted that Plaintiff had not experienced repeated episodes of decompensation while sober. (*Id.*) She opined that absent alcohol Plaintiff did not meet the criteria for any impairment and that Plaintiff could perform "simple, unskilled tasks." (R. 1074-76.) She stated that there were no records that suggested marked impairment without alcohol. (R. 1074.)

At the hearing, Dr. O'Brien testified that alcohol would be a material factor in a finding of disability. (R. 51.) Dr. O'Brien observed that of Plaintiff's many hospitalizations, only the "very last hospitalization, when he'd stopped taking his medication, was a hospitalization . . . that did not result from a heavy drinking episode." (R. 50.) She stated that she disagreed with Dr. Sarpy's letters because the letters did not accurately report Plaintiff's sobriety and were not consistent with the treating record. (R. 51, 54.) On cross-examination, Dr. O'Brien opined that although Plaintiff could

15

not do "fast-paced work," he could perform "simple, easily learned tasks with minimal public contact." (R. 55.) She agreed with Plaintiff's attorney that Plaintiff's bipolar disorder had been symptomatic, but that "[t]he only time it starts to meet a listing level is when he's decompensating because of alcohol use or not taking his meds." (*Id.*) Dr. O'Brien further stated that when Plaintiff was not using alcohol, he "verbalize[d] much more rational, reasonable thinking, and intelligence" and noted that he was able to lead Alcoholics Anonymous meetings. (R. 56.)

The ALJ gave "substantial weight" to the opinions of Dr. O'Brien because Dr. O'Brien is a "specialist, is familiar with the disability program, and has had the opportunity to review and evaluate the entire record." (R. 24.) Plaintiff argues that the ALJ erred in relying on Dr. O'Brien's opinion because Dr. O'Brien "failed to recognize" that Plaintiff's "symptoms were not in fact, caused by alcohol use, but rather Plaintiff used alcohol, when his symptoms were already severe, as a way to cope and self-medicate them." (Pl.'s Mem. at 13.) Dr. O'Brien testified that Plaintiff's symptoms only became severe enough to require hospitalization when Plaintiff was drinking or had stopped taking his medications. (R. 55.) Her conclusion that Plaintiff's affliction only became disabling when he drank alcohol was supported by the record, and this court cannot reweigh the evidence to reach the conclusion that Plaintiff prefers. *See Cunningham v. Barnhart*, 440 F.3d 862, 865 (7th Cir. 2006); *White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005). The ALJ sufficiently articulated valid reasons for relying on Dr. O'Brien's testimony, and was entitled to give her opinion substantial weight.

### 3.    Plaintiff's Credibility

Plaintiff objects to the ALJ's criticisms of Plaintiff's credibility because the ALJ "fail[ed]

to consider the entire case record." (Pl.'s Mem. at 14.) The Social Security Administration provides

guidelines as to how the ALJ should determine credibility:

> The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186 at *2. In determining a claimant's credibility, the ALJ justify the

findings with specific reasons supported by the record. *Craft,* 539 F.3d at 678. In evaluating the

claimant's complaints of pain or other symptoms, the ALJ must consider any objective medical

evidence, the claimant's daily activities, level of pain or symptoms, precipitating and aggravating

factors, medication, treatment or other measures used to alleviate pain and any other factors

concerning limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c). As

with other determinations, an ALJ need not discuss every piece of evidence, but he must build an

accurate and logical bridge from the evidence to the conclusions. *See, e.g., Villano*, 556 F.3d at 562;

*Craft*, 539 F.3d at 673.

  Because the ALJ is in the best position to determine a claimant's credibility, *Simila v. Astrue*,

573 F.3d 503, 517 (7th Cir. 2009), the ALJ's credibility finding is reviewed with "special deference."

*Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010). The ALJ's decision need not be perfect and

is only overturned if it is "patently wrong." *Id.* "It is only when the ALJ's determination lacks any

explanation or support that we will declare it to be 'patently wrong.'" *Elder v. Astrue*, 529 F.3d 408,

413-14 (7th Cir. 2008) (quoting *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003)).

  The ALJ concluded that Plaintiff's statements concerning his symptoms were not credible

and extensively discussed the reasons for that conclusion. (R. 20.) The ALJ noted that Plaintiff was

non-compliant with taking his medications and resistant to suggestions for treatment. (R. 20-21.)
The ALJ also discussed and cited medical records that indicated that "when sober and medication
complaint, [Plaintiff's] functioning improves." (R. 22.) Those cited records included a March 2006
statement from Dr. Sarpy opining that when taking his medications and not drinking, Plaintiff was
stable and could work in a non-competitive environment after a few months of consistent stability.
(R. 437-38.) The ALJ also highlighted that after a six-month period of sobriety, Plaintiff was
attempting to write a book about his experiences, leading Alcoholics Anonymous meetings,
attending sporting events, and resisting the temptation to drink. (R. 22.) Plaintiff claims that this
evidence does not "equate to Plaintiff's ability to sustain full-time employment" and that the ALJ
failed to recognize that "[t]hose with mental illness experience numerous fluctuations in their
symptoms." (Pl.'s Mem. at 15 (citing *Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir. 2011); *Punzio v.
Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Larson*, 615 F.3d at 751). Contrary to the situations in
the cases cited by Plaintiff, the ALJ was not ignoring the fact that Plaintiff could fluctuate between
bad or good days. Instead, based on the medical records, the ALJ drew the conclusion that when
Plaintiff was complaint with his medications and sober, his functioning improved.

The ALJ also stated that the record indicates that the Plaintiff "lies and easily deceives
people." (R. 21.) The ALJ noted that Plaintiff was "quite focused on obtaining Social Security
benefits." (*Id.*) Specifically, the ALJ pointed to an incident where Plaintiff had declined to attend
residential treatment because he would be expected to get a job, and Plaintiff wanted to wait until
his benefits application was resolved. (*Id.* (citing R. 954.)) Plaintiff takes issue with the ALJ's
statement because "the ALJ left out the fact that immediately thereafter Plaintiff expressed interest
in [an] intensive outpatient program." (Pl.'s Mem. at 14.) Plaintiff does not contend that the

18

outpatient program had a job requirement so it is hard to see how that fact undermines the ALJ's conclusion that Plaintiff was not working in part because he was applying for benefits rather than because of limitations due to his disease.

Plaintiff further objects to the ALJ's mention of Plaintiff's February 2010 statement that he would stop taking his medication in order to demonstrate the severity of his symptoms to the Social Security Administration. (Pl.'s Mem. at 14 (citing R. 21).) According to Plaintiff, the ALJ did not acknowledge that "by the end of that same session Plaintiff . . . indicated he would continue taking his medications." (*Id.*) The ALJ, however, correctly noted that Plaintiff subsequently was hospitalized in March 2010 after he had ceased taking his medication (R. 21), and therefore, the ALJ was not wrong in considering Plaintiff's threat to stop taking his medication.

The ALJ also discounted Plaintiff's claimed limitations in daily activities because the limitations could not be "objectively verified with any reasonable degree of certainty" and "it is difficult to attribute that degree of limitation to [Plaintiff's] medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision." (R. 22.) Plaintiff does not take issue with this part of the ALJ's analysis.

In sum, the ALJ supported his credibility finding with sufficient evidence from the record and satisfied the requirement to build an accurate and logical bridge from the evidence to his conclusions.

### 4.    Medical Evidence after March 4, 2010

Plaintiff argues that the ALJ failed to "discuss any of the medical evidence after March 4, 2010" in determining Plaintiff's residual functioning capacity and that the "failure was particularly

19

egregious because it covered a large portion of Plaintiff's sustained sobriety." (Pl.'s Mem. at 9.) In reply, Plaintiff further specifies that the ALJ failed to discuss "at least 20 appointments" post-March 2010. (Pl.'s Reply at 3-4.)

An ALJ "must evaluate all relevant evidence when determining an applicant's [residual functioning capacity]." *Arnett v. Astrue,* 676 F.3d 586, 591 (7th Cir. 2006). He is not required, however, to "discuss every piece of evidence in the record and is prohibited only from ignoring an entire line of evidence that supports the finding of disability." *Jones v. Astrue,* 623 F.3d 1155, 1162 (7th Cir. 2010).

The Commissioner correctly points out that Plaintiff's contention is belied by the ALJ's decision, which specifically cites a treatment note from Dr. Sarpy from May 2010, and opinion evidence from August 2010 and October 2010. (Def.'s Mem. at 8 (citing R. 23-24).) Further, the ALJ cited the exhibit number corresponding to treatment notes spanning the period from July 2009 to August 2010, and noted that Plaintiff missed many appointments. (R. 22.) The ALJ was not required to discuss every treatment note, and in any event, those notes do not constitute an entire line of evidence that would support a finding of disability. Hence, Plaintiff's argument that the ALJ did not consider or discuss any of the post-March 2010 medical evidence is not factually correct nor does it support a basis for a finding in favor of Plaintiff.

## CONCLUSION

For the foregoing reasons, the ALJ's decision denying benefits was supported by substantial evidence. Accordingly, Plaintiff's motion for summary judgment [dkt 21] is denied, and the Commissioner's cross-motion for summary judgment is granted [dkt 23]. Judgment is entered for

the Commissioner and against Plaintiff.

_____
Geraldine Soat Brown
United States Magistrate Judge

Date: October 29, 2013